# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

FEEONQUAY JENKINS,

                Plaintiff,

v.

CITY OF KENOSHA WISCONSIN,
OFFICER WILLIE HAMILTON,
POLICE OFFICER JOHN DOE,
POLICE CHIEF DANIEL MISKINIS,
KENOSHA COUNTY WISCONSIN,
SHERIFF DAVID BETH, BOOKING
CORRECTIONAL OFFICIAL DOE,
SECOND CORRECTIONAL
OFFICIAL DOE, KENOSHA
COUNTY CORRECTIONAL
HEALTH SERVICES MANAGER
DENISE, and KENOSHA COUNTY
CORRECTIONAL MEDICAL
DIRECTOR DR. ADBUL DURRANI,

                Defendants.

Case No. 17-CV-1779-JPS

**ORDER**

Plaintiff Feeonquay Jenkins ("Jenkins"), who is incarcerated at Kenosha County Jail, proceeds in this matter *pro se*. He filed a complaint alleging that the defendants violated his constitutional rights. (Docket #1). On June 6, 2018, the Court screened Jenkins' complaint pursuant to 28 U.S.C. § 1915A(a). (Docket #12). The Court identified several deficiencies in Jenkins' complaint, finding that it failed to state a valid claim for relief as pleaded. *Id.* at 5–7. The Court permitted Jenkins the opportunity to correct those deficiencies and ordered that he file an amended complaint no later

than thirty days from entry of that order, meaning on or before July 6, 2018. *Id.* at 7.

On July 5, 2018, Jenkins filed a motion for an extension of time to file an amended complaint. (Docket #13). He asked for sixty additional days to complete that filing. *Id.* He offered no reason for his delinquency, apart from a brief mention of medical records. *Id.* Then, on July 9, 2018, the Court received from Jenkins an amended complaint dated July 3, 2018. (Docket #14). Although the amended complaint was filed beyond the Court's deadline, the Court will nonetheless accept it in this instance. His motion for an extension of time will be denied as moot. Jenkins is admonished, though, that any failure to comply with a Court order in the future may result in dismissal of his case.

The Court will screen the amended complaint pursuant to 28 U.S.C. § 1915A(a). All of the standards applicable to screening announced in the Court's original screening order apply here. (Docket #12 at 1–3).

Jenkins' amended complaint is premised on the same operative facts as was his original complaint. Jenkins alleges that on March 27, 2016 he was shot and taken to Froedtert Hospital of Wisconsin. (Docket #14 at 2). About a week later, while Jenkins was still recovering, Kenosha police officers Willie Hamilton ("Hamilton") and John Doe arrived at the Hospital claiming to have a warrant for Jenkins' arrest, and they arrested him. *Id.* at 6. The officers took Jenkins to Kenosha County Jail (the "Jail"). *Id.* at 7. Jenkins complains that the officers did not consider the severity of his injuries when deciding to remove him from the hospital. *Id.*

Once at the Jail, Jenkins was placed in an unsanitary holding cell by defendants Booking Correctional Official Doe and Second Correctional Official Doe. *Id.* He told those officers that he was in excruciating pain from

his injuries and needed the medication that was sent along with him from the hospital. *Id.* The officers told Jenkins they did not have his medication and they refused to call medical staff to attend to Jenkins' medical needs. *Id.* After six hours, Jenkins was taken to the medical unit. *Id.* He does not describe the care he was given there.

On the night of April 8, 2016, which the Court assumes was Jenkins' first night in the Jail, no one came to check on him. *Id.* at 8. The next morning, a medical staffer came around with medications, and Jenkins told him that he was in pain and needed his bandages changed. *Id.* That person told Jenkins to file a medical request. *Id.* Jenkins then filed a grievance complaining about his pain and the delay of medical treatment therefor. *Id.*

On April 10, 2016, Jenkins' bandages were changed by a nurse at the Jail. *Id.* Jenkins noticed yellow puss and a foul odor during the changing, but the nurse did not mention or attend to those things. *Id.* Jenkins continued to suffer a great deal of pain. *Id.* Later that day, an officer performing his rounds noticed that Jenkins was suffering, saw that the gauze on Jenkins' side was saturated with puss, and called a nurse. *Id.* Jenkins was then transported to Aurora Hospital, examined, and then transferred to Froedtert Hospital, where he learned that he had contracted a staph infection and MRSA. *Id.* Jenkins remained in the hospital for a week for treatment, all the while in pain. *Id.*

Jenkins was then sent back to the Jail, where he was placed in "isolation" in the medical ward. *Id.* He soon posted bond and was released from the Jail. *Id.* at 9.

The Court will examine Jenkins' allegations as they relate to each of the named defendants. First, Jenkins seeks to sue Hamilton and Officer John

Doe for violation of his right to adequate medical care by arresting him at the hospital and transporting him to the Jail.

The Supreme Court first recognized an incarcerated person's right to receive adequate medical care in *Estelle v. Gamble*, 429 U.S. 97 (1976), which concerned a convicted prisoner. In that case, the Court concluded that deliberate indifference to a prisoner's serious medical need violates the Eighth Amendment's protection against cruel and unusual punishment. *Id.* at 104–05. But a pretrial detainee, unlike a convicted prisoner, is still entitled to the presumption of innocence, and therefore he cannot be punished at all. *Kingsley v. Hendrickson,* 135 S. Ct. 2466, 2475 (2015).

In light of this distinction, the Seventh Circuit recently made clear that a pretrial detainee's medical-care claim arises under the Fourteenth Amendment and is subject only to an objective unreasonableness inquiry. *Miranda v. Cnty. of Lake*, No. 17-1603, 2018 WL 3796482, at *11 (7th Cir. Aug. 10, 2018). The Seventh Circuit describes the claim's elements this way: the pretrial detainee plaintiff must show that the defendants "acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their [actions]," and the defendants' conduct was objectively unreasonable. *Id.*

Under this standard, Jenkins' claims against Hamilton and Officer John Doe cannot proceed. Jenkins has not alleged that those officers were reckless in deciding to transport Jenkins from the hospital to the Jail (which had a medical unit) or that they had reason to know that, once at the Jail, the medical staff and other officers would not properly care for Jenkins' injuries. Indeed, the hospital agreed to discharge him to the officers' custody. In other words, Jenkins has not alleged that the officers acted with

purpose, knowledge, or recklessness when considering the consequences of transporting Jenkins from the hospital to the Jail.

The same is not true for Jenkins' claims against Booking Correctional Official Doe and Second Correctional Official Doe. He alleges that they purposely held him for six hours without medical attention and withheld his prescribed pain medication, all the while knowing that he was in pain and needed medical treatment. Given the lenient standard applied at screening, these allegations suffice to state a Fourteenth Amendment claim for violation of Jenkins' right to adequate medical care.

Next, Jenkins alleges that Kenosha County (the "County"), Sheriff David Beth ("Beth"), Jail Health Services Manager Denise ("Denise"), and Jail Medical Director Dr. Abdul Durrani ("Durrani") "have a policy and practice of not providing immediate medical care and treatment to individuals brought into their care and custody[]." (Docket #14 at 20). As to Beth, Denise, and Durrani, Jenkins' amended complaint includes no allegations about them whatsoever, apart from his statement implying that because they have supervisory roles, they are responsible for the actions of those they supervise. It is "well-settled that a claim against a state or local agency or its officials may not be premised upon a *respondeat superior* theory." *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir. 1986) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Further, individual liability under Section 1983 "requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (quotation omitted). Jenkins makes no such allegations about Beth, Denise, and Durrani, and his claims against them will, therefore, be dismissed.

As to the County, Jenkins' claim could only proceed if he sufficiently alleged the elements of a *Monell* claim. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978). *Monell* provides an avenue for relief against a governmental entity for constitutional violations that are caused directly by a policy or custom of the governmental entity. *Id.* at 694. To maintain a Section 1983 claim against a governmental entity, the plaintiff must first identify a "policy or custom" attributable to governmental policymakers. *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002) (citing *Monell*, 436 U.S. at 691–94). A "policy or custom" may take one of three forms: "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although notice authorized by written law or express [governmental] policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Id.* (quotation omitted). The plaintiff must also demonstrate "the requisite causation," which means that "the policy or custom was the 'moving force' behind [his] constitutional deprivation." *Id.*

Jenkins has not alleged that County has an express policy that compels the mistreatment of injured detainees; indeed, he does not allege that the booking officer defendants acted in accordance with, or contravention of, any policy at all. He also has not alleged that the County has a widespread practice of mistreating injured detainees; he only makes allegations about his individual experience. Finally, he does not allege that any person with final policymaking authority actually caused his injury. His passing references to the sheriff and the Jail's medical staff supervisors do not amount to allegations of affirmative acts on their parts to deprive him of his constitutional rights.

Finally, Jenkins alleges that the City of Kenosha (the "City") and Daniel Miskinis ("Miskinis"), the City's police chief, failed to properly train their officers regarding the arrest of someone with serious injuries. (Docket #14 at 20). But a municipality (or its official sued in his official capacity) cannot be liable under a *Monell* failure-to-train theory when there is no underlying constitutional violation by a municipal employee. *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir. 2010). Because Jenkins has not stated a constitutional claim based on his arrest and transport from the hospital to the Jail, he cannot maintain a *Monell* claim against the City or Miskinis.

In sum, the Court finds that Jenkins may proceed only on his claims against Booking Correctional Official Doe and Second Correctional Official Doe for violation of his Fourteenth Amendment right to adequate medical care.

To facilitate service of the complaint and identification of the Doe defendants, the Court will leave Sheriff Beth, for the time being, as a defendant in this action. *See Duncan v. Duckworth*, 644. F.2d 653, 655 (7th Cir. 1981). Plaintiff is advised that in the Court's scheduling order, which will be issued after Beth is served, he will be afforded a period of time in which to conduct discovery into the identities of the Doe defendants. He should seek this information from Beth. Failure to amend the complaint to identify the Doe defendants by the deadline set forth in the scheduling order may result in dismissal of this action. Once the Doe defendants are identified, the Court will dismiss Beth as a defendant.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for an extension of time (Docket #13) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Defendants City of Kenosha Wisconsin, Officer Willie Hamilton, Police Officer John Doe, Police Chief Daniel Miskinis, Kenosha County Wisconsin, Kenosha County Correctional Health Services Manager Denise, and Kenosha County Correctional Medical Director Dr. Abdul Durrani be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the amended complaint (Docket #14) and this order upon defendant Sheriff David Beth pursuant to Federal Rule of Civil Procedure 4. Plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). Although Congress requires the court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service;

**IT IS FURTHER ORDERED** that Defendants shall file a responsive pleading to the amended complaint;

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from his institution trust account the balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Plaintiff is transferred to

another institution, county, state, or federal, the transferring institution shall forward a copy of this Order along with Plaintiff's remaining balance to the receiving institution;

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Plaintiff is confined; and

**IT IS FURTHER ORDERED** that Plaintiff shall submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 7th day of September, 2018.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge