# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| FEEONQUAY JENKINS,<br><br>      Plaintiff,<br><br>v.<br><br>MARQUIS GRIFFEN and<br>SAMANTHA TIETZ,<br><br>      Defendants. | Case No. 17-CV-1779-JPS<br><br>**ORDER** |

Plaintiff, a Wisconsin prisoner proceeding *pro se*, was allowed to proceed on a claim that he was denied adequate medical care in violation of his rights under the Fourteenth Amendment. (Docket #15 and #38). Specifically, Plaintiff alleges that Defendants Marquis Griffen ("Griffen") and Samantha Tietz ("Tietz"), both correctional officers at the Kenosha County Jail (the "Jail"), failed to give him pain medication or call for medical assistance despite Plaintiff's repeated requests for the same. (Docket #15 at 2). Plaintiff had been arrested and transported to the Jail from the hospital where he was being treated for a recent gunshot wound. *Id.* at 2–3. Plaintiff claims to have been left untreated and unseen by medical staff for six hours. *Id.* at 3.

Defendants filed a motion for summary judgment on July 31, 2019. (Docket #56). Along with their motion, Defendants filed a supporting statement of facts. (Docket #58). According to that statement, Plaintiff was in fact treated by the Jail's medical staff within minutes of his arrival at the facility. The nurse who checked on Plaintiff cleared him for booking and did not order or otherwise indicate an immediate need for pain medication.

Additionally, Plaintiff would only have been allowed to leave the hospital if his treating physician felt he was in good enough condition to be discharged.

As to Defendants' own involvement, they were working in the booking section of the facility and only saw Plaintiff during his time there—a matter of hours. Plaintiff admitted in his deposition that he only asked Griffen once about pain medication *after* having been seen by the medical staff. Griffen responded, truthfully, that booking did not have the pain medication Plaintiff had supposedly brought with him from the hospital.[1] Plaintiff also asked Griffen to call the medical staff to check in on the medication issue. Defendants do not say whether Griffen actually made that call, but Plaintiff acknowledged that he did not believe that Griffen was intentionally withholding medication from him. As for Tietz, Plaintiff never spoke with her directly. He apparently believes she must have overheard his conversation with Griffen.

Defendants state that during this time Plaintiff had not yet been arraigned in connection with the charges that led to his arrest. Thus, the proper source of Plaintiff's right to medical care is the Fourth Amendment, not the Fourteenth. *See Ortiz v. City of Chi.*, 656 F.3d 523, 530 (7th Cir. 2011). Under the Fourth Amendment, an arrestee is entitled to reasonable medical care. *Id.* Four factors are used to evaluate whether the care provided was objectively unreasonable: "(1) whether the officer has notice of the detainee's medical needs; (2) the seriousness of the medical need; (3) the scope of the requested treatment; and (4) police interests, including

---

[1] Plaintiff further admitted that he did not actually bring medication with him, only some un-filled prescriptions.

administrative, penological, or investigatory concerns." *Id.*; *see also Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007).

Defendants contend that their conduct did not deny Plaintiff a reasonable level of medical care. First, they claim that they had no notice of an immediate need for pain medication, as Plaintiff had been cleared by multiple layers of medical personnel who did not order such treatment. Correctional officers are entitled to rely upon the care and judgment of medical personnel with regard to inmate medical treatment. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). Similarly, Plaintiff did not tell Defendants about a serious, imminent medical need. He simply inquired about his medications. Plaintiff also did not present with an apparent medical need that had been overlooked by medical personnel or had significantly deteriorated since his last checkup.

Second, as Defendants were largely untrained in medical care, the Jail did not give them any authority to override the treatments prescribed (or not prescribed) by the medical staff. In other words, Defendants could not obtain pain medication on their own and give it to Plaintiff. Third, Defendants maintain that the system for controlling the fulfillment and distribution of prescriptions at the Jail serves an important penological interest. Obviously, neither the Jail nor any other prison facility can permit narcotic pain medication to flow freely without careful oversight.

Plaintiff responded to Defendants' motion on September 3, 2019. The entire response consists of thirteen pages. The first six pages are a legal brief, (Docket #62 at 1–6), and an affidavit from Plaintiff providing a narrative of the relevant events, *id.* at 7–8. The final five pages are affidavits from other prisoners concerning the filing of grievances at the Jail. (Docket #62-1).

Nowhere in Plaintiff's submissions, however, is a response to Defendants' statement of facts that complies with the applicable procedural rules. Federal Rule of Civil Procedure 56 and Civil Local Rule 56 describe in detail the form and contents of a proper summary judgment submission. In particular, they state that a party opposing a summary judgment motion must file

> (B) a concise response to the moving party's statement of facts that must contain:
>
> (i) a reproduction of each numbered paragraph in the moving party's statement of facts followed by a response to each paragraph, including, in the case of any disagreement, specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon[.]

Civ. L. R. 56(b)(2)(B)(i); *see* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record[.]").

Plaintiff's failure to submit a response to Defendants' statement of facts is wholly unacceptable, in light of the fact that Plaintiff was provided a copy of the procedural rules three times, twice by the Court, (Docket #21 and #42), and once by Defendants themselves along with their summary judgment motion, (Docket #56). In fact, in their opening brief, Defendants asked that the Court deny a prior motion for summary judgment filed by Plaintiff, (Docket #43), as being non-compliant with these rules, (Docket #57 at 13–14). Thus, Plaintiff should have been keenly aware of the need to pay careful attention to the procedures surrounding summary judgment submissions.

Plaintiff flaunted those rules at his own peril. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). Though the Court is required to liberally construe a

*pro se* plaintiff's filings, it cannot act as his lawyer, and it cannot delve through the record to find favorable evidence for him. Even if such relevant and favorable evidence could be located in the record, the Court cannot compile that evidence for him and construct legal or factual arguments on his behalf. In other words, the Court cannot abandon its role as a neutral decisionmaker and become an advocate for one party. Thus, the Court deems Defendants' facts undisputed for purposes of deciding their motion for summary judgment. *See* Fed. R. Civ. P. 56(e); Civ. L. R. 56(b)(4); *Hill v. Thalacker*, 210 F. App'x 513, 515 (7th Cir. 2006) (noting that district courts have discretion to enforce procedural rules against *pro se* litigants).

Based on the undisputed facts presented by Defendants, summary judgment is clearly appropriate in their favor. Defendants had almost no interaction with Plaintiff at all, and what little they did came nowhere close to a denial of reasonable medical care. The Court will, therefore, dismiss this action with prejudice. The Court will also grant Defendants' motion to seal an exhibit to their summary judgment motion, (Docket #54), and deny as moot various motions filed by Plaintiff, (Docket #33, #43, and #44).

The Court concludes with an additional observation about the evidence in this case. Even if Plaintiff had filed an appropriate statement of facts, it is more than likely that the Court would still grant summary judgment in Defendants' favor based on his admissions in his deposition, which flatly contradict the allegations of his complaint and his narrative affidavit. Plaintiff claims that Defendants should not be entitled to rely on that sworn testimony because he was not allowed to review and sign it. He does not cite any authority for his assertion, and in any event, Plaintiff would only have been able to correct typographical errors, not change the substance of the testimony. Indeed, Plaintiff does not actually point to any

inaccuracies in the deposition. It seems that he merely wants to avoid the testimony because it is unfavorable. Many litigants would like to do that, but it is not permitted. *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168–69 (7th Cir. 1996) ("We have long followed the rule that parties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions.").

Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment (Docket #56) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendants' motion to seal (Docket #54) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motions to compel (Docket #33), for summary judgment, (Docket #43), and for a preliminary injunction, (Docket #44), be and the same are hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 17th day of January, 2020.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge